**\*\* E-filed November 3, 2010 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AWGI, LLC and ATLAS VAN LINES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DUNCAN & ELBAZ, INC., et al., <br><br> Defendants. | No. C10-01529 HRL <br><br> **ORDER DENYING MOVANT FAROOQUI'S MOTION TO QUASH DEPOSITION SUBPOENA AND FOR PROTECTIVE ORDER AND FOR COSTS AND ATTORNEY'S FEES** <br><br> **[Re: Docket No. 31]** |

**BACKGROUND**

Plaintiffs AWGI, LLC and Atlas Van Lines, Inc. (collectively, "Plaintiffs") provide transportation of household goods to consumers under their ATLAS-related registered trademarks (the "ATLAS Marks"). (Docket No. 1 ("Complaint"), ¶¶ 21-23.) Plaintiffs filed suit against eight defendants for trademark counterfeiting and infringement, trade dress infringement, and unfair competition under the Lanham Act, copyright infringement under the Copyright Act, and California state law claims for allegedly offering services identical to those of Plaintiffs through websites, email addresses, and telephone numbers that utilize the ATLAS Marks. (*Id*.)

Plaintiffs have yet to serve four of those defendants: Duncan & Elbaz, Inc. ("D&E"), Dan Horwize ("Horwize"), Edan Elbaz ("Elbaz"), and Rachel Lawson ("Lawson") (collectively, the

"Unserved Defendants").[1]  Plaintiffs say they have not done so because they cannot find them. (Docket No. 35 ("Opp'n") at 3-4.)  Plaintiffs believe that defendant Elbaz is the "ringleader" of all the defendants and think that if they can locate and serve Elbaz, they will be able to locate and serve the other Unserved Defendants.  (Opp'n at 4.)  Elbaz, it should be noted, is also the registered agent for service of process for D&E.  (Complaint, ¶ 8.)

To that end, Plaintiffs served a deposition subpoena on D&E's and Elbaz's counsel, Omair Farooqui ("Farooqui"), requiring him to appear for deposition and bring with him any and all non-privileged documents referencing and/or identifying Elbaz's address, phone number, and any and all other contact information.  (Docket No. 31-2 ("Farooqui Decl."), Ex. C.)

Farooqui moved to quash the subpoena on the grounds that his client's address is protected from disclosure by the attorney-client privilege.  (Docket No. 31 ("Motion").)  Farooqui also moved for a protective order preventing his deposition and for his attorney's fees and costs incurred in filing his motion to quash.  (*Id.*)  Plaintiffs opposed Farooqui's motion, and the Court heard oral argument on the matter on October 26, 2010.

**DISCUSSION**

Farooqui argues that he should not be deposed because he is counsel for E&D and Elbaz and because Plaintiffs seek information protected by the attorney-client privilege.  He contends that the three-part test established in the Eighth Circuit case *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986), should apply, and Plaintiffs appear to agree.  (Motion at 4; Opp'n at 6.)  That case held that a deposition of a party's attorney should be permitted only where the party seeking the deposition shows that (1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.  *Shelton,* 805 F.2d at 1327.

Although the parties have not cited binding precedent, this court has noted in the past that *Shelton* is generally recognized as the leading case on attorney depositions by a number of district

---

[1] One other defendant, Itzhak Taizi, was also never served, but Plaintiffs voluntarily dismissed him on August 24, 2010.  (Docket No. 30.)

courts within this circuit, including several within this District.[2]  Accordingly, the *Shelton* test shall be applied.

### 1. The Information Is Crucial to the Preparation of the Case

Taking the third requirement first, the location of E&D and Elbaz is clearly crucial to Plaintiffs' case; without it, they cannot properly serve E&D and Elbaz (and possibly Horwize and Lawson, the other two Unserved Defendants) with the complaint.

### 2. There Do Not Appear to Be Other Means to Obtain the Information

As for the first requirement, the Court is satisfied that Plaintiffs have exhausted all other reasonable means of obtaining Elbaz's location.  They have interviewed E&D's former customers; hired two private investigators to research at least six alleged addresses of the Unserved Defendants; and requested assistance from federal law enforcement agencies, all to no avail.  (Opp'n at 7; Docket No. 35-1 ("Warzecha Decl."), ¶¶ 4-6; Docket No. 35-2 ("Ghazarians Decl."), ¶ 8.)  In addition, Plaintiffs maintain that they have not been to serve the Unserved Defendants because they have evaded personal service.  (Motion at 4.)  For example, Plaintiffs apparently had located Elbaz just prior to filing their complaint, but after it was filed, Elbaz slipped away before he could be served.  (Opp'n at 7; Warzecha Decl., ¶ 6.)  From these facts, it is clear that Plaintiffs' subpoena of Farooqui represents a last-ditch effort to locate Elbaz because their numerous other efforts have all failed, and not merely an easy-way-out approach to prosecuting its action.

### 3. The Information Sought Is Relevant and Not Privileged

"Generally, the identity of an attorney's client and the nature of the fee arrangement between an attorney and his client are not privileged."  *In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986) (citing *In re Osterhoudt,* 722 F.2d 591, 592 (9th Cir. 1983); *Schofield,* 721 F.2d at 1222; *Lahodny,* 695 F.2d at 365; *United States v. Sherman,* 627 F.2d 189, 190 (9th Cir. 1980); *United States v. Hodge & Zweig,* 548 F.2d 1347, 1353 (9th Cir. 1977)).  This is because "[t]he fact of representation and the associated fee arrangement are preliminary, by their own nature, establishing

---

[2] *See S.E.C. v. Jasper*, No. C07-06122 JW (HRL), 2009 WL 1457755, at *3 n.1 (citing *Massachusetts Mutual Life Ins. Co. v. Cerf,* 177 F.R.D. 472, 479 (N.D. Cal., 1998); *Fausto v. Crediqy Servs. Corp.,* No. C07-05658, 2008 WL 4793467 (N.D. Cal., Nov. 3, 2008); *Graff v. Hunt & Henriques,* No. C08-0908, 2008 WL 2854517 (N.D. Cal., July 23, 2008); *Nocal, Inc. v. Sabercat Ventures, Inc.,* No. C04-0240, 2004 WL 3174427 (N.D. Cal., Nov. 15, 2004)).

only the existence of the relation between client and counsel, and therefore, normally do not involve the disclosure of any communication arising from that relation after it was created." *In re Grand Jury Subpoenas*, 803 F.2d at 496 (citing *Osterhoudt,* 722 F.2d at 593). As one court explained in regard to similar cases in the Second Circuit, "[t]he common theme of cases such as these is that the client is not entitled to shield information which the client has provided to the attorney not in confidence, as the factual basis for the request for legal advice, but only as incidental to the establishment of the relationship." *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 130 F.R.D. 25, 25 (S.D.N.Y. 1990).

Similarly — although the parties have cited no authority binding upon this Court — it appears that the general rule with respect to a client's location is this: A client's whereabouts are protected by the attorney-client privilege only when "communicated to the lawyer in confidence for the very purpose of obtaining legal advice with regard to the client's location." *Litton Industries*, 130 F.R.D. at 26. *See also Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 683 (N.D. Ga. 2000); *Integrity Ins. Co. v. American Centennial Ins. Co.*, 885 F.Supp. 69, 73-74 (S.D.N.Y. 1995), *abrogated on other grounds by Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210 (2d Cir. 2008); *Matter of Grand Jury Subpoenas Served Upon Field*, 408 F.Supp. 1169, 1173 (S.D.N.Y. 1976); *In re Stolar*, 397 F.Supp. 520, 524 (S.D.N.Y. 1975). To meet this rule, then, the client must have wanted his or her location to be kept confidential <u>and</u> the client must have been seeking out legal advice regarding his or her location and not some other purpose. In other words, a movant asserting the attorney-client privilege must "mak[e] a showing that the address 'was [something] more than incidental to the attorney-client relationship.'" *Viveros*, 200 F.R.D. at 683 (quoting *Integrity Ins. Co.*, 885 F.Supp. at 74).

Farooqui relies heavily on the out-of-Circuit case *Matter of Grand Jury Subpoenas Served upon Field*, 408 F.Supp. 1169 (S.D.N.Y. 1976). In that case, the attorney movants' affidavits stated that the client requested that the attorneys review the laws of a number of jurisdictions in connection with the client's proposed change of residence. *Matter of Grand Jury Subpoenas Served upon Field*, 408 F.Supp. at 1171. After receiving the attorneys' advice, the client moved to one of these jurisdictions and informed the attorneys of his location and requested that the attorneys keep his new

4

location confidential. *Id.* Under these sworn facts, the court thus concluded that "the residence and whereabouts of [the client] were communicated to these attorneys in confidence, as an incident to the obtaining of legal advice and as part of an attorney-client relationship" and granted the movants' motion to quash. *Id.* at 1173.

Such a showing cannot be made simply through conclusory statements, though. In granting a plaintiff's motion to compel the deposition of a witness's attorney to discover the witness's address, the court in *Litton Industries* found the statements in the attorney movant's affidavit insufficient. The court explained:

> Here . . . the sole support for the claim of privilege is the statement in the lawyer's affidavit that, "At the time of Campbell's communications to your deponent, a civil action was threatened by the [Securities and Exchange Commission] and the communications concerning his address were matters having to do with that action." This cryptic and conclusory statement does not suffice to take this case out of the general rule that information which identifies a client is unprotected by the attorney-client privilege. There is no evidence that the client's address was provided in confidence or that treating the information as confidential is justified because it was related to the legal advice requested.

*Litton Industries*, 130 F.R.D. at 26 (internal citation omitted).

In this case, Farooqui says in his similarly cryptic declarations that Elbaz sought his legal advice about this action and, specifically, about "the law relating to service of process." (Farooqui Decl., ¶ 4; Docket No. 36-1 ("Farooqui Supp. Decl."), ¶ 3.) Farooqui also says that Elbaz's address was central to their attorney-client communications and that he was "specifically instructed" to keep Elbaz's location confidential. (Farooqui Supp. Decl., ¶ 4.)

Plaintiffs argue in opposition that Elbaz's address was "merely incidental" to Farooqui's communications with Elbaz. (Opp'n at 8.) This is shown, they say, by the settlement discussions between Farooqui and Plaintiffs' counsel, Mark Warzecha ("Warzecha"), which took place during an April 28 telephone conversation, apparently at the request of Elbaz. (Opp'n at 8-12; Farooqui Decl., ¶ 4 ("As part of my professional engagement with Defendant, Edan Elbaz, I was asked to contact Plaintiff's counsel in this matter and investigate the possibility of resolving Plaintiffs' claims.").)

In his declaration, Farooqui states that during the respective counsels' telephone call, which he initiated, "Mr. Warzecha asked me during our telephone conversation if I was authorized to

5

accept service of process on behalf of Defendant, Edan Elbaz, to which I responded that I was not. Thereafter I sent a letter to Mr. Warzecha via facsimile confirming that I was not authorized to accept service of process on behalf of Defendants, Duncan and Elbaz, Inc., or Edan Elbaz." (Farooqui Decl., ¶ 5.)

Warzecha, on the other hand, says that Farooqui's description of the conversation is incomplete. Warzecha says that when he first asked Farooqui whether he was authorized to accept service of the complaint on behalf of D&E and Elbaz, Farooqui said yes. (Warzecha Decl., ¶ 8.) About an hour later, though, Farooqui called back and advised him that he was not authorized to accept service on behalf of them. (Warzecha Decl., ¶ 9.) Farooqui followed this up with a letter stating the same. (*Id*.) The Court notes that Farooqui did not challenge Warzecha's description of the sequence of events.

Taken together, the parties' descriptions of this discussion lead the Court to believe that Elbaz contacted Farooqui, first and foremost, to discuss the merits of this lawsuit and to have Farooqui reach out to Plaintiffs' counsel to broach the topic of settlement. Unlike the client in *Matter of Grand Jury Subpoenas Served upon Field*, Elbaz did not seek Farooqui's legal advice specifically as to his address or location. Elbaz did not, for instance, ask Farooqui to provide legal advice about different jurisdictions to which Elbaz could move. Rather, the facts that (1) it was Farooqui who initiated the telephone call to Plaintiffs' counsel to discuss the settlement of Plaintiffs' claims and (2) Farooqui initially told Plaintiffs' counsel that he <u>was</u> authorized to accept service on behalf of D&E and Elbaz, suggest that Elbaz's location was not the "factual basis for the request for legal advice" from Farooqui. *Litton Industries*, 130 F.R.D. at 25. Indeed, if Elbaz actually told Farooqui his location "for the very purpose of obtaining legal advice with regard to" his location (*i.e.*, for Elbaz to avoid being served), it is highly unlikely that Elbaz would also ask Farooqui to contact Plaintiffs' counsel about settling the matter. *Id*. at 26. After all, what would be the point of settling a case in which you have not even been served?

Plaintiffs also point out that the court in *Matter of Grand Jury Subpoenas Served upon Field*, after concluding that the client's address was protected by the attorney-client privilege, specifically noted that there had not been any allegations that the legal advice was given for the purpose of

6

aiding the commission of a crime, to enable a defendant to avoid any criminal investigation or proceeding pending at the time the advice was given, or to enable the client to avoid lawful process in a pending proceeding. *Matter of Grand Jury Subpoenas Served upon Field*, 408 F.Supp. at 1173-74. This suggests that had any of those facts been present, the court may have decided differently. Here, one of those facts <u>is</u> present, and this Court <u>will</u> decide differently. It would be fundamentally unfair to allow Elbaz to cloak his whereabouts with the protections of the attorney-client privilege in order to avoid service of process when the legal advice he sought did not directly involve his location. Thus, for the reasons explained above, Elbaz's location is not privileged.

Because all three requirements of the *Shelton* test have been met, Farooqui's motion to quash Plaintiffs' subpoena will be denied. Consequently, Farooqui's request for the issuance of a protective order preventing his deposition and for attorney's fees and costs will also be denied.

**CONCLUSION**

Based on the foregoing, Farooqui's motion is DENIED. Farooqui shall comply with Plaintiffs' deposition subpoena within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: November 3, 2010

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C10-01529 HRL Notice will be electronically mailed to:**

| | |
|---|---|
| Ann Marie Ghazarians | aghazarians@hfdclaw.com |
| Fred W. Schwinn | fred.schwinn@sjconsumerlaw.com, cand_cmecf@sjconsumerlaw.com, fschwinn@gmail.com |
| Mark F Warzecha | mark@warzechalaw.com |
| Vanessa Kathryn Herzog | vherzog@hfdclaw.com, jtanji@hfdclaw.com, maguilar@hfdclaw.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**